**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | |
|---|---|
| AMANDA LYNN MUISER,<br>    Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of the<br>Social Security Administration,<br>    Defendant. | )<br>)<br>)<br>)    CAUSE NO.: 2:14-CV-167-PRC<br>)<br>)<br>)<br>)<br>) |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Amanda Lynn Muiser on May 16, 2014, and a Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 17], filed on October 31, 2014. Plaintiff requests that the December 10, 2012 decision of the Administrative Law Judge denying her claim for disability insurance benefits and supplemental security income be reversed and remanded for further proceedings. On February 10, 2015, the Commissioner filed a response, and Plaintiff filed a reply on February 17, 2015. For the following reasons, the Court grants Plaintiff's request for remand.

**PROCEDURAL BACKGROUND**

Plaintiff filed applications for disability insurance benefits and supplemental security income on March 2, 2011, and her alleged onset date is July 23, 2009. Her claims were denied initially and upon reconsideration. Plaintiff timely requested a hearing, which was held on November 14, 2012. In attendance were Plaintiff, her attorney, and an impartial vocational expert. On December 10, 2012, Administrative Law Judge ("ALJ") Mark Naggi, issued a written decision denying benefits, making the following findings:

    1.      The claimant meets the insured status requirements of the Social Security Act through March 31, 2015.

2. The claimant has not engaged in substantial gainful activity since July 23, 2009, the alleged onset date.

3. The claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spines, obesity, GERD, irritable bowel syndrome, sleep apnea, and left foot neuroma.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry 10 pounds occasionally and less than 10 pounds frequently, sit for 6 out of 8 hours, and stand/walk in combination for 2 out of 8 hours. She can occasionally climb ramps and stairs, but no ladders or scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. She cannot have any exposure to unprotected heights or moving mechanical parts and is limited to simple, routine, and repetitive tasks.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born [in 1975] and was 33 years old, which is defined as a younger individual, age 18-44, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 23, 2009, through the date of this decision.

(AR 17-26).

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. Plaintiff filed this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses

the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable

4

physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity ("RFC"), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite

[her] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Plaintiff seeks reversal and remand for further proceedings, arguing that the ALJ failed to (1) properly analyze whether Listing 1.04 was satisfied; (2) properly assess Plaintiff's hand limitations; (3) determine the RFC based on the evidence of record by rendering an independent medical determination; and (4) properly evaluate Plaintiff's credibility. The Court considers each argument in turn.

### A. Listing 1.04

At step three of the disability evaluation process, the ALJ determines whether a claimant's impairments meet or equal the criteria of a Listing of Impairments, and, if they do, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). An individual suffering from an impairment that meets the description of a listing or its equivalent is conclusively presumed to be disabled. *See Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). In order "[f]or a claimant to show that h[er] impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). An impairment that manifests only some of the criteria will not qualify, no matter its severity. *Id*. A claimant "has the burden of showing that h[er] impairments meet a listing, and [s]he must show that h[er] impairments satisfy all of the various criteria specified in the listing." *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006) (citing *Maggard v. Apfel*, 167

6

F.3d 376, 380 (7th Cir. 1999)). Nevertheless, "[i]n considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citing *Brindisi ex rel. Brindisi*, 315 F.3d at 786); *see also Scott*, 297 F.3d at 595-96.

Plaintiff argues that the ALJ failed to properly analyze whether Listing 1.04 was satisfied because the ALJ's perfunctory statement regarding the listing did not consider any evidence of record or offer any reasoning. Specifically, Plaintiff argues that the ALJ ignored favorable evidence showing that she meets Listing 1.04A.

> Listing 1.04 provides:
>
> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, *degenerative disc disease*, facet arthritis, vertebral fracture), *resulting in compromise of a nerve root* (including the cauda equina) or the spinal cord. With:
>
> A. *Evidence of nerve root compression characterized by neuro-anatomic distribution of pain*, *limitation of motion of the spine*, *motor loss* (atrophy with associated muscle weakness or muscle weakness) accompanied by *sensory or reflex loss* and, if there is involvement of the lower back, *positive straight-leg raising test* (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04 (emphasis added).

7

The ALJ's two-sentence listing analysis first provides: "There is no evidence that the claimant has a physical impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, including but not limited to, Listings 1.02, 1.04, 3.10, and 5.06." (AR 20). The ALJ then states that, specifically regarding Listing 1.04, "there is no evidence of (a) nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss, and positive straight-leg raising test; (b) spinal arachnoiditis; or (c) lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively." *Id*. The ALJ neither identifies nor analyzes any evidence in making this finding.

First, Listing 1.04 requires a disorder of the spine with compromise of the nerve roots or spinal cord. 20 C.F.R. Pt. 404, Subpt. P, App.1, § 1.04. The ALJ found that Plaintiff has degenerative disc disease, a qualifying Listing 1.04 spinal disorder. For the opening paragraph criteria, there appears to be evidence of compromise of the nerve root or spine with the March 7, 2012 lumbar spine computerized tomography showing a "mild to moderate broad based, left posterolateral disc herniation at L5-S1 which also extends into the lower aspect of the L5-S1 neuroforamen and causes significant compromise at this level." (AR 873-74). On February 21, 2012, Dr. Julian Ungar-Sargon found chronic lumbar radiculopathy based on nerve conduction studies. (AR 866-68).

Plaintiff then argues that she can show all the criteria for Listing § 1.04(A), namely evidence of nerve root compression characterized by neuro-anatomical distribution of pain, limitation of

8

motion of the spine, motor loss with sensory or reflex loss, and, because the low back is at issue, positive straight leg testing. First, Plaintiff identifies medical records that demonstrate nerve root compression with neuro-anatomical pain distribution. Initially, in June 2011, there was not evidence of nerve root compression. The June 8, 2011 MRI of the lumbar spine was taken because of complaints of pain in the lower back radiating to the right hip. (AR 975). The impression was: "At L4-L5, mild central bulging of the disc with no compression of the nerve roots bilaterally. At L5-S1, moderately decreased height and hydration of intervertebral disc and mild circumferential bulging, in addition there is a small tear of the annulus fibrosis in the left central region with mild protrusion encroaching on the thecal sac, however no nerve roots compressions are seen bilaterally. There is no bony spinal stenosis." (AR 976).

However, Plaintiff continued to complain of radiating pain. A November 18, 2011 treatment note from North Point Internal Medicine shows complaints of radiating leg pain resulting from a bulging disc in her back. (AR 938). A November 18, 2011 CT of the lumbar spine was taken, with the results showing disc bulging at L4-L5 with evidence of mild bilateral neural foraminal stenosis at L5-S1 due to endplate spurring. (AR 944, 978). The February 21, 2012 nerve conduction study showed chronic lumbar radiculopathy. (AR 868). And, evidence of nerve root compression appears in the March 7, 2012 lumbar spine CT, which has an indication of "low back pain radiating down right leg" with the impression listed in the previous paragraph of "mild to moderate broad based, left posterolateral disc herniation at L5-S1 which also extends into the lower aspect of the L5-S1 neuroforamen and causes significant compromise at this level." (AR 873-74). On August 27, 2012, Plaintiff reported to Dr. Erin Vicari chronic pain radiating down both legs, worse on the right. (AR

961). She reported that she had been getting injections from Dr. Ungar but that they were not helping. *Id*.

Second, there is evidence of limitation of back motion. At the consultative examination on July 28, 2010, state agency physician Teofilo Bautista, M.D. found forward flexion of 90 degrees, extension of 20 degrees, and bilateral lateral flexion of 25 degrees. (AR 364). Plaintiff was unable to do range of motion of either hip due to low back pain and unable to lie in supine position. *Id*. On April 18, 2011, consultative examiner Mutena Korman, M.D. found limited range of motion in her lower joints. (AR 752, 753).

Third, there is evidence of motor loss shown by diminished strength. On both July 17, 2012, and on August 21, 2012, Plaintiff's pain specialist, Dr. Ungar-Sargon, found on examination that the "[l]ower right distal muscle weakness is 4/5 strength on the MRC scale." (AR 834, 838). The Court recognizes that there are other instances in which Plaintiff's strength in certain extremities is described as "excellent." (AR 989). However, in light of all the favorable evidence, it is the ALJ's duty to discuss the evidence to determine if Plaintiff meets the listing.

Fourth, there is evidence of sensory loss. On both July 17, 2012, and August 21, 2012, Dr. Ungar-Sargon found that, "[o]n sensory examination, there is a loss of all modality in the lower extremities touch sensation is reduced in the right L-5 dermatomes." (AR 834, 838).

Fifth, there is evidence of positive straight leg raising on November 18, 2011, February 14, 2012, and March 7, 2012. (AR 939, 947, 922, 931).

Inexplicably, the ALJ did not discuss any of these records or provide any rationale for rejecting this evidence as not meeting the requirements for Listing 1.04. *See Kastner v. Astrue*, 697 F.3d 642, 647-48 (7th Cir. 2012). Consequently, the Court remands this case for a proper analysis

at step three to give the ALJ another opportunity to consider all the evidence in the record and build a logical bridge between the evidence and his conclusion, specifically addressing Listing 1.04A for disorders of the back. *Minnick v. Colvin*, 775 F.3d 929, 935-36 (7th Cir. 2015) ("This is the very type of perfunctory analysis we have repeatedly found inadequate to dismiss an impairment as not meeting or equaling a Listing.").

In addition, Plaintiff argues that the ALJ erred by filing to properly consider her morbid obesity in conjunction with her musculoskeletal impairment at step three to determine if she meets Listing 1.04. Plaintiff's BMI of over 50 constitutes extreme obesity, the highest categorization of obesity under Social Security Ruling 02-1p. SSR 02-1p, 2002 WL34686281, *2 (Sept. 12, 2002). The ALJ found Plaintiff's obesity to be a severe impairment at step two. (AR 18). In the second of the two paragraphs of his step three analysis, the ALJ acknowledged Plaintiff's obesity and body mass index of 51.5, noting that he "considered the claimant's obesity in relation to the musculoskeletal, respiratory, and cardiovascular body systems listings as required by the Ruling." (AR 20).

Under SSR 02-1p, the ALJ must specifically address the effect of obesity on a claimant's limitations, including when determining whether the claimant meets a listing. *See* SSR 02-1p, at *1, 3. Obesity often leads to complications of the cardiovascular, respiratory, and musculoskeletal body systems and may contribute to loss of mental clarity, as well as slowed reactions caused by obesity related sleep apnea. *Id*. at *3. The ALJ may find that a listing has been met "if there is an impairment that, in combination with obesity, meets the requirements of [the] listing." *Id*. at *5. Here, in addition to not analyzing the medical evidence that appears to support a finding that Plaintiff meets Listing 1.04, the ALJ offers no analysis of why Plaintiff's obesity in combination with that medical evidence

11

did not equal the listing. This, too, was reversible error given the evidence of Plaintiff's musculoskeletal disorders and her morbid obesity. *See Accurso v. Astrue*, No. 10 C 0968, 2011 WL 578849, at *3 (N.D. Ill. Feb. 9, 2011); *Dogan v. Astrue*, 751 F. Supp. 2d 1029, 1047 (N.D. Ind. 2010); *see also Martinez v. Astrue*, 630 F.3d 693, 698-99 (7th Cir. 2011).

Nor can the ALJ's consideration of the state agency reviewing physicians' opinions rehabilitate the ALJ's error. *See Prochaska*, 454 F.3d at 737 (recognizing that an ALJ's failure to consider obesity explicitly may be harmless error when the ALJ adopts the limitations suggested by specialists and reviewing doctors who were aware of the obesity). First, the ALJ did not discuss the opinions at step three. Second, in discussing the opinions in the context of the RFC, the ALJ gave the opinions "little weight." (AR 24). Finally, and most importantly, most of the evidence that appears to support a finding of disability under Listing 1.04, all of which is set forth above, came into the record after the state agency physicians' review. *See Campbell v. Astrue*, 627 F.3d 299, 309 (7th Cir. 2010) (giving consultative opinions less weight because they had reviewed only part of the treatment records). Dr. Corcoran's physical RFC assessment was given on August 13, 2010, and was affirmed by Dr. Sands on November 1, 2010. (AR 381, 390). Dr. Sands' physical RFC assessment was given on May 3, 2011, and was affirmed on August 10, 2011, by Dr Brill. (AR 768). "[L]ongstanding policy requires that the judgment of a physician . . . designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge . . . must be received into the record as expert opinion and evidence and given appropriate weight." SSR 96-6p, 1996 WL374180, *3 (July 2, 1996). Social Security Ruling 96-6p further requires that an ALJ obtain an updated medical opinion when additional evidence is received that the ALJ believes may change the state agency medical consultant's findings on whether the impairment

equals a listing. SSR 96-6p, 1996 WL374180, *3-4 (July 2, 1996). Given the nature of the additional medical evidence, this seems to be a case in which an updated opinion is warranted.

## B. Residual Functional Capacity

The RFC is a measure of what an individual can do despite the limitations imposed by her impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. § 404.1545(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. §§ 404.1545(e)(2), 416.945(e)(2); *Diaz*, 55 F.3d at 306 n.2. The RFC is an issue at steps four and five of the sequential evaluation process. SSR 96-8p, 1996 WL 374184, *3 (July 2, 1996). The ALJ's RFC finding must be supported by substantial evidence. *Clifford*, 227 F.3d at 870. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, at *3. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id*.

The ALJ found that Plaintiff has bilateral carpal tunnel syndrome but found the impairment to be non-severe at step two. However, in formulating the RFC, which included an unlimited capacity for hand use, the ALJ did not discuss Plaintiff's carpal tunnel syndrome. On remand, should the disability determination proceed past the listing analysis at step three, the ALJ is directed to discuss Plaintiff's carpal tunnel syndrome and hand tremors in formulating the RFC.

Plaintiff also faults the ALJ for not relying on any opinion evidence in formulating the RFC after having given the state agency reviewing physicians' opinions "little weight," suggesting that the ALJ rendered an independent medial assessment (AR 24). However, an ALJ is not required to base the RFC determination solely on medical opinion evidence. *Suide v. Astrue*, 371 F. App'x 684,

13

690 (7th Cir. 2010) (finding that the rejection of the opinion record left an evidentiary deficit because the rest of the record did "not support the parameters included in the ALJ's residual functional capacity determination"); *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) (recognizing that an ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians (citing *Diaz*, 55 F.3d at 306, n.2)). On remand, if the ALJ reaches the RFC determination and does not obtain an updated medical opinion or does obtain an updated medical opinion that does not receive full weight, the ALJ is instructed to specifically identify the medical evidence of record that supports the RFC. In addition, the ALJ is directed to discuss whether any limitations are required in relation to Plaintiff's sleep apnea, foot neuroma, GERD, irritable bowel syndrome, and headaches.

## C. Credibility Determination

In making a disability determination, the ALJ must consider a claimant's statements about her symptoms, such as pain, and how the symptoms affect her daily life and ability to work. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a). Subjective allegations of disabling symptoms alone cannot support a finding of disability. *Id*. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1) The individual's daily activities;
(2) Location, duration, frequency, and intensity of pain or other symptoms;
(3) Precipitating and aggravating factors;
(4) Type, dosage, effectiveness, and side effects of any medication;
(5) Treatment, other than medication, for relief of pain or other symptoms;
(6) Other measures taken to relieve pain or other symptoms;
(7) Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). "Because the ALJ is 'in the best position to determine a witness's truthfulness and forthrightness . . . this court will not overturn an ALJ's

credibility determination unless it is 'patently wrong.'" *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012) (quoting *Skarbek*, 390 F.3d at 504-05); *see also Prochaska*, 454 F.3d at 738. Nevertheless, "an ALJ must adequately explain his credibility finding by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009)); SSR 96-7p, 1996 WL 374186, at *2 (Jul. 2, 1996) ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").

In finding Plaintiff not fully credible, the ALJ relied on Plaintiff's activities of daily living of getting her youngest son ready and off to school, helping this son do his homework, showering on her own while sitting, cooking a little, washing dishes, folding her clothes, going grocery shopping two to three times a month, paying bills, driving, and completing her Bachelor of Arts degree in psychology online. On remand, should the ALJ advance past step three and make a credibility determination, the ALJ is directed to explain how these minimal daily activities equate with the ability to do full time work. *See Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012); *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011); *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005). In assessing Plaintiff's credibility, the ALJ is further directed to explain any reliance on Plaintiff's course of treatment, use of narcotic pain medication, "gaps" in treatment, and failure to lose weight.

### D. Request for an Award of Benefits

An award of benefits is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). Based on the discussion above, remand, not an immediate award of benefits, is appropriate.

### CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 17], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order. The Court **DENIES** Plaintiff's request to award benefits.

So ORDERED this 28th day of September, 2015.

                                                     s/ Paul R. Cherry
                                                   MAGISTRATE JUDGE PAUL R. CHERRY
                                                   UNITED STATES DISTRICT COURT